No. 26- 10312

# United States Court of Appeals
## for the Eleventh Circuit

---

SAFE AFFORDABLE GEORGIA, INC,

*Plaintiff-Appellant,*

v.

JAMES KREYENBUHL, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Northern District of Georgia,
Hon. Elenor L. Ross
(Dist. Ct. No. 1:25-cv-06985)

OPENING BRIEF

---

Christopher S. Anulewicz
Bradley Arant Boult Cummings
LLP
1230 Peachtree Street NE
21st Floor
Atlanta, GA 30309

Charles Miller
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW,
Suite 801
Washington, D.C. 20036
Tel: (202) 301-9800
Fax: (202) 301-3399
cmiller@ifs.org

*Counsel for Plaintiff-Appellant*

ORAL ARGUMENT REQUESTED

Safe Affordable Georgia, Inc., respectfully requests the case be set for oral argument. This appeal concerns whether a meaningful and effective remedy is available for state regulation of election-related speech that the district court found to unconstitutionally advantage the sitting lieutenant governor, but left unremedied. Candidate speech is at the heart of the First Amendment. Gubernatorial elections are of great public interest. Ensuring that laws governing candidate speech for the highest statewide office comply with the First Amendment is of critical importance. This case warrants oral argument.

TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT OF THE ISSUES ...................................................4

STATEMENT OF THE CASE.........................................................4

SUMMARY OF THE ARGUMENT ........................................13

ARGUMENT ......................................................................................15

I. THE DISTRICT COURT ERRED BY REFUSING TO AFFORD A REMEDY TO THE CONSTITUTIONAL VIOLATION IT FOUND. ................................................16

II.    THERE IS A SUBSTANTIAL RISK OF IRREPARABLE HARM TO SAGA UNLESS THE INJUNCTION IS GRANTED....................................................25

III.    ISSUING AN INJUNCTION WILL NOT HARM THE DEFENDANTS, THIRD PARTIES OR THE PUBLIC INTEREST........................................................26

IV.    NO BOND IS WARRANTED .............................................................27

CONCLUSION...................................................................................27

WORD COUNT AND TYPEFACE CERTIFICATE..............................29

TABLE OF AUTHORITIES

<u>Cases</u>

*BellSouth Telecomms., Inc. v. MCImetro Access Trans. Servs., LLC,*
  425 F.3d 964 (11th Cir. 2005)............................................................29

*Booth v. Pasco County,*
  757 F.3d 1198 (11th Cir. 2014).........................................................14

*Carr v. WBJ Leadership, Inc.,*
  No. 1:25-cv-04426 (N.D. Ga. Aug. 28, 2025) ..................................17, 22

*Citizens United v. FEC,*
  558 U.S. 310 (2010).....................................................................16, 21

*Davis v. Fed. Election Comm'n,*
  554 U.S. 724 (2008)......................................................12, 13, 15, 18, 26

*Elrod v. Burns,*
  427 U.S. 347 (1976)....................................................................15, 27

*FF Cosms. FL, Inc. v. City of Miami Beach,*
  866 F.3d 1290 (11th Cir. 2017).........................................................17

*Jackson v. Jones,*
  No. 1:26-cv-00782 (N.D. Ga. Feb. 25, 2026).......................................23

*LaCroix v. Town of Fort Myers Beach,*
  38 F.4th 941 (11th Cir. 2022) ...................................................13, 18, 29

*Nken v. Holder,*
  556 U.S. 418 (2009)..........................................................................28

*One Georgia, Inc. v. Carr,*
  601 F. Supp. 3d 1291 (N.D. Ga. 2022)................................................17

*Perdue v. Kemp,*
   584 F. Supp. 3d 1310 (N.D. Ga. 2022)............................................12, 16

*Riddle v. Hickenlooper,*
   742 F.3d 922 (10th Cir. 2014)......................................................25, 26

*Sessions v. Morales-Santana,*
   582 U.S. 47 (2017) ....................................................................17, 21

*Trump v. CASA, Inc.,*
   606 U.S. 831 (2025) ..........................................................14, 19, 20, 26

Statutes

28 U.S.C § 1331 ...........................................................................4

28 U.S.C. § 1292 ..........................................................................4

O.C.G.A. § 21-5-3............................................................................5, 6

O.C.G.A. § 21-5-30..................................................................6, 8, 11, 21, 23

O.C.G.A. § 21-5-34.2........................................................................7

O.C.G.A. § 21-5-41..............................................................5, 6, 8, 11, 21, 23

iv

INTRODUCTION

Georgia candidates are in the midst of a competitive primary election for governor that ends in May. Speech relating to this election—campaign speech—falls squarely within the First Amendment's core free speech guaranty. Plaintiff Safe Affordable Georgia, Inc., ("SAGA"), a political committee, requires urgent injunctive relief to secure its fundamental right to speak about this election.

The district court found that SAGA is suffering an ongoing urgent constitutional injury, and that issuing the requested preliminary injunction would remedy that harm. Yet, the district court refused to enjoin the constitutional violation, because the narrowly tailored injunction Plaintiff requested would remedy only *its* harm, and not the harm suffered by other non-party speakers.

This court should adopt the district court's finding that Georgia's campaign finance regime is likely unconstitutional as applied to Plaintiff, and focus on the relatively simple task of affording an appropriate remedy.

In the race at issue, the incumbent is not running for reelection. And Georgia campaign finance law affords a significant advantage to one

1

candidate, Burt Jones, the lieutenant governor. He alone can chair a committee that may fundraise without limits and can coordinate with his campaign. He alone can accept unlimited donations into that same committee for the election while the legislature is in session between now and early April.

The district court correctly and unsurprisingly found this advantage is likely unconstitutional. This was the fourth district court case to do so. Yet the district court refused to enter a preliminary injunction to level the playing field because the remedy would not expressly benefit non-parties. "[E]njoining enforcement of the contribution limits against Plaintiff would not prevent the unconstitutionality caused by the [statutory scheme] because contributors to [other] candidates . . . would still be subject to those limits." Order at 15.

The court erred on multiple levels. First, our Constitution would mean little if courts do not remedy constitutional violations against parties because non-parties' rights are being equally violated. Second and in direct conflict with the district court reasoning, the Supreme Court has made clear that injunctions in favor of nonparties are disfavored and injunctive relief, particularly preliminary injunctive

2

relief, should be limited to that necessary to afford relief to the plaintiff. Third, if plaintiff is wrong on this point, the district court should have fashioned a broader preliminary injunction than requested in order to remedy the First Amendment violation for all those impacted instead of refusing to enter any relief. Plaintiff wants a level playing field and would not object to such relief but believed it could not request such relief at the preliminary injunction phase.

With primary in-person voting commencing on April 27 and finishing on May 19, SAGA will be irreparably harmed should a preliminary injunction not issue. The district court's refusal to enter an injunction after finding a constitutional violation should be reversed.

JURISDICTIONAL STATEMENT

(a) The district court had jurisdiction over this matter under 28 U.S.C § 1331, as Plaintiff-Appellant brought a constitutional challenge to Defendants-Appellees' enforcement of state campaign finance laws against Plaintiff.

(b) This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) over this appeal of the denial of the request for a preliminary injunction.

(c)  The order denying the preliminary injunction was entered on January 27, 2026 and docketed on January 28, 2026. Plaintiff-Appellant filed its notice of appeal the same day. The appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1.  Whether, after correctly determining that provisions of the Georgia campaign finance scheme are unconstitutional as applied to Plaintiff because those laws prohibit Plaintiff from raising and spending funds to support its chairman's campaign for governor in a party primary election while allowing a similar committee for an opponent to support its chairman, the district court erred by determining it could not order a limited preliminary injunction benefiting Plaintiff because the injunction would not also expressly benefit third-parties?

2.  Whether, based on this legal error, the district court abused its discretion in not entering a preliminary injunction rectifying the irreparable First Amendment violation it correctly found exists?

## STATEMENT OF THE CASE

*The Regulatory Regime*

Georgia defines a "campaign committee" as "the candidate, person, or committee which accepts contributions or makes expenditures designed

4

to bring about the nomination or election of an individual to any elected office." O.C.G.A. § 21-5-3(2). Georgia limits the amount of money that any statewide "candidate or campaign committee" may receive from any person for each primary, general, and runoff election. O.C.G.A. § 21-5-41(a).

An "independent committee" is "any committee . . . other than a campaign committee, political party, or political action committee, which receives donations during a calendar year from [its] members or supporters," which it spends "either for the purpose of affecting the outcome of an election for any elected office or to advocate the election or defeat of any particular candidate." O.C.G.A. § 21-5-3(15). Independent committees may not coordinate their activities with an individual candidate or his or her campaign committee. *See* Ga. Comp. R. & Regs, R. 189-6-04 ("an expenditure . . . must not be made with the cooperation or consent of, or in consultation with, or at the request or suggestion of any candidate or any of his or her agents or authorized committees," lest it be "considered a contribution which is subject to limits").

A "political action committee" is an organization "which receives donations during a calendar year from persons who are members or supporters of the committee and which contributes funds to one or more candidates for public office or campaign committees of candidates for public office." O.C.G.A. § 21-5-3(20). PAC contributions to candidates are subject to the limits contained in O.C.G.A. § 21-5-41. Contributions to a PAC cannot be made or accepted "to bring about the nomination or election of a candidate for any office." O.C.G.A. § 21-5-30(a). SAGA is dually registered as both an independent committee and PAC, known as a hybrid PAC in Georgia campaign finance law.

A "leadership committee" is "a committee, corporation, or organization chaired by the Governor, the Lieutenant Governor," or a political party's nominee for Governor or Lieutenant Governor "selected in a primary election in the year in which he or she is nominated." O.C.G.A. § 21-5-34.2(a). However, "[a] leadership committee shall be a separate legal entity from a candidate's campaign committee and shall not be considered an independent committee." O.C.G.A. § 21-5-34.2(f).

"A leadership committee may accept contributions or make expenditures for the purpose of affecting the outcome of any election or

6

advocating for the election or defeat of any candidate, may defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office, and may defray ordinary and necessary expenses incurred in connection with a public officer's fulfillment or retention of such office." O.C.G.A. § 21-5-34.2(d). It may coordinate expenditures with a campaign committee and cover expenses ordinarily borne by a campaign committee, as it is exempt from Section 21-5-41's contribution limits. O.C.G.A. § 21-5-34.2(e).

Neither entitles like Plaintiff nor leadership committees face contribution limits. The primary distinction between a hybrid PAC and a leadership committee is that a leadership committee may raise funds to support a candidate who chairs that committee and may coordinate with any candidate and candidate campaign committees in unlimited amounts, while Plaintiff cannot coordinate with any candidate. The primary distinction between a leadership committee and a campaign committee is that the latter faces strict fundraising and coordination limits, which the former lacks.

Defendants James D. Kreyenbuhl, Rick Thompson, David Burge, Stan Wise and Dana Diment are the five members of the Georgia State

Ethics Commission ("SEC"). The SEC is the state agency responsible for civil enforcement of Georgia campaign finance laws, including the fundraising purpose restrictions in O.C.G.A. § 21-5-30(a) and the contribution and coordination limits in O.C.G.A. § 21-5-41. Defendant Georgia Attorney General Chris Carr is responsible for the criminal enforcement of Georgia campaign finance laws.

*The 2026 Gubernatorial Primary*

Plaintiff Safe Affordable Georgia registered as an independent committee with the State Ethics Commission on November 13, 2025. *See* Germany Decl., Doc 2-2 ¶ 2-3 and Exh. A. Germany also registered Safe Affordable Georgia as a PAC on November 20, 2025. *Id.* at ¶ 3. Safe Affordable Georgia is chaired by Brad Raffensperger, Georgia's Secretary of State and a candidate in the 2026 Republican primary for governor. *Id.* at ¶ 4.

The candidate field for the Republican gubernatorial nomination also includes Burt Jones, the sitting Lieutenant Governor. Jones has designated WBJ Leadership Committee, Inc. ("WBJ") as his leadership committee. *Id.* at ¶ 5. WBJ functions as a parallel campaign committee with unlimited fundraising abilities, alongside Jones's traditional

8

campaign committee, Burt Jones for Georgia, Inc. *Id.* at ¶ 6. In its June 30, 2025, semi-annual SEC filing, WBJ disclosed having over $14 million cash on hand, all of which is available to be spent as directed by Jones in support of his primary campaign. *Id.* at ¶ 7 and Exh. B. Indeed, as of the June 2025 report, WBJ received contributions of $100,000 from four sources, and approximately 60 contributions of $10,000 or more, in the reporting period. *Id.* Each of these donations exceeds the limits for contributions to campaign committees. *Id.*

A candidate with a leadership committee is statutorily bestowed a significant fundraising and expenditure advantage over a candidate who isn't allowed to set up a leadership committee. *Id.* at ¶ 8. A competing campaign committee cannot raise the funds that a leadership committee can raise. *Id.* at ¶ 9. And even if a competing candidate controls a hybrid PAC, that hybrid PAC cannot solicit contributions for the candidate or coordinate expenditures with the campaign or candidate. *Id.*

The 2026 legislative session began January 9, and is slated to run through April 6. During this time, Raffensperger and Jones cannot raise funds through their campaign committees during session under O.C.G.A.

9

§ 21-5-35. However, under Georgia law, Jones may raise funds for use in the primary election through WBJ Leadership Committee.

Voters were able to request absentee ballots for the primary beginning on March 3. https://bit.ly/45GdGrQ. Absentee ballots will be mailed beginning April 20. *Id.* Early in-person voting will begin on April 27. *Id.* Primary election day is May 19. *Id.*

Safe Affordable Georgia intends, when allowed by law, to coordinate with Raffensperger, his campaign, and other candidates and campaign committees to the same extent WBJ can coordinate with Jones and other committees. Germany Decl. at ¶ 10. Safe Affordable Georgia intends, when allowed by law, to accept above-limit contributions and coordinate the expenditure of those funds with campaign committees to advance the election prospects of the supported candidates. *Id.* at ¶ 11.

However, Safe Affordable Georgia refrains from soliciting contributions for coordination purposes, and from coordinating with candidates and campaign committees, including Raffensperger and his campaign committee, Brad for Governor, Inc., on account of the coordinated spending limits Georgia places on hybrid PACs through O.C.G.A. § 21-5-30(a)'s bar on a hybrid PAC accepting contributions made to bring about the nomination or election of a candidate for any

10

office; and O.C.G.A. § 21-5-41's bar on a hybrid PAC coordinating its expenditures with campaign committees. *Id.*

*Procedural History*

Plaintiff filed the underlying case on December 8, 2025 and filed an emergency motion for preliminary injunction the same day. The court heard arguments on January 14, 2026, and denied the motion via written order dated January 27, but entered on January 28.

The order found the challenged laws are likely unconstitutional:

> Georgia's election finance scheme functionally imposes no contribution limits for Jones but limits contributions for all other candidates in the primary. Because the scheme allows WBJ to accept unlimited contributions and to coordinate expenditures with the Jones campaign, the campaign may accept unlimited contributions to its campaign through WBJ. Meanwhile, although the scheme does not prevent SAG from accepting unlimited contributions, it caps SAG's coordinated expenditures with the Raffensperger campaign because the campaign may only accept contributions from SAG subject to the limits of § 21-5-41. This structure results in the "imposi[tion of] different contribution and coordinated . . . expenditure limits on candidates vying for the same seat"—a result "antithetical to the First Amendment."

Order, Doc 25 at 13-14 (quoting *Perdue v. Kemp,* 584 F. Supp. 3d 1310, 1323 (N.D. Ga. 2022)); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 743-744 (2008).

The district court, however, refused to provide a remedy "because the relief SAG seeks is incongruous with the injury." *Id.* at 13. It found the requested relief to be *too narrow*. "[I]f this Court were to grant the requested injunction and prevent Defendants from enforcing the contribution limits against SAG, the unconstitutional structure created by the LC Statute would remain and privilege Raffensperger over the remaining primary candidates still subject to those limits." *Id.* at 15. Rather than fashion relief the district court found appropriately broad, affording the requested relief to all similarly situated committees, the district court instead denied any relief to Plaintiff and left the unconstitutional regime undisturbed. *Id.* at 16.

Plaintiff appealed the same day the order was entered and filed a motion for injunction pending appeal with the district court the next day. The district court denied that motion on February 2, 2026. Plaintiff filed a motion for injunction pending appeal with this court on February 4. Doc 7. This court denied the motion, without opinion, in a short order on March 3, the same day this brief was filed. Doc 18.

*Standard of Review*

A district court's order denying a preliminary injunction is reviewed for abuse of discretion. *LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941, 946 (11th Cir. 2022). But its legal conclusions and findings of "constitutional facts" made therein are reviewed de novo. *Id.* Constitutional facts — "the ultimate fact[s] upon which the resolution of the constitutional question depends" — are reviewed de novo because "First Amendment issues are not ordinary." *Booth v. Pasco County*, 757 F.3d 1198, 1210 (11th Cir. 2014). "The reaches of the First Amendment are ultimately defined by the facts it is held to embrace, and [the court of appeals] must thus decide for [itself] whether a given course of conduct falls on the near or far side of the line of constitutional protection." *Id.*

SUMMARY OF THE ARGUMENT

The district court correctly found the challenged campaign finance regime likely to be unconstitutional. It then erred when it failed to afford a remedy. The district court wrongly concluded that it should not afford the requested narrow injunction to Plaintiff because other

13

similarly situated committees would not directly benefit from the requested injunction.

The narrowly tailored injunction Plaintiff sought complies with Supreme Court admonition that injunctive relief must target the plaintiff and not third parties. "Neither declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs" who sued. *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025). The district court erred when it concluded a preliminary injunction must benefit non-parties.

Plaintiff requested the district court suspend restrictions on its ability to coordinate with Brad Raffensperger, its chairman, who is running for governor. Plaintiff requested this injunction so it would operate under the same rules as a similar committee that is raising and spending unlimited amounts supporting its chairman, who is one of Raffensperger's opponents in the Republican primary. Having found the campaign finance regime likely unconstitutional, "the obvious remedy is to raise or eliminate those limits." *Davis*, 554 U.S. at 743.

14

It was error not to enter an injunction. "[J]eopardizing a movant's First Amendment rights, for even minimal periods of time, creates a threat of irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "The timeliness of political speech is particularly important," necessitating a preliminary injunction. *Id.* at n.29. The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United*, 558 U.S. at 339. Enjoining the application of the challenged laws against Plaintiff is the only action a court could take that would afford a meaningful and effective remedy. Accordingly, this court should reverse the district court and enter the injunction.

## ARGUMENT

The district court held that the challenged regulatory regime "is likely unconstitutional." Order at 13. Defendants cannot maintain a campaign finance regime that affords one candidate unrestricted fundraising freedom while curtailing the ability of competing candidates to raise and spend for their campaigns. In fact, the district court noted that Defendants did not even defend the disparity in the regulatory regime on the merits. *Id.* at n.7. "[I]mposing different

15

contribution and coordinated party expenditure limits on candidates vying for the same seat is antithetical to the First Amendment." *Davis v. Fed. Election Comm'n*, 554 U.S. at 744. The opinion below followed three earlier district court decisions to find Georgia's incongruous fundraising regime to be unconstitutional. *See Perdue v. Kemp*, *supra*; *One Georgia, Inc. v. Carr*, 601 F. Supp. 3d 1291 (N.D. Ga. 2022); *Carr v. WBJ Leadership, Inc.*, No. 1:25-cv-04426, Order (N.D. Ga. Aug. 28, 2025).

## I.     The District Court Erred by Refusing to Remedy the Constitutional Violation It Found.

This appeal is about the availability of a remedy. Once a party establishes its entitlement to a remedy, the crafting of the appropriate injunction is the role of the court. *Sessions v. Morales-Santana*, 582 U.S. 47, 72 (2017) (granting different equitable remedy than what was requested). "[A]n ongoing violation of the First Amendment constitutes an irreparable injury." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). "[N]either the government nor the public has any legitimate interest in enforcing an unconstitutional [law]." *LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941, 955 (11th Cir. 2022). Thus, when First Amendment injuries are found, quickly enjoining them is often the only meaningful remedy.

The Supreme Court has even said what the remedy should be in this instance. "If the normally applicable limits on individual contributions and coordinated [ ] contributions are seriously distorting the electoral process, . . . and if those limits are not needed in order to combat corruption, then the obvious remedy is to raise or eliminate those limits." *Davis*, 554 U.S. at 743. That is precisely what is happening here. The ordinary limits placed on Plaintiff "are seriously distorting the electoral process" because its competitor does not have any limits.

The district court implicitly found the requested injunction would afford complete relief to Plaintiff when it stated, "if this Court were to grant the requested injunction and prevent Defendants from enforcing the contribution limits against SAG, the unconstitutional structure created by the LC Statute would remain and privilege Raffensperger over the remaining primary candidates still subject to those limits." Order at 15.

The district court refused to afford this remedy because Plaintiff sought relief only for itself and did not request the injunction be extended to similarly situated non-parties. *Id.* ("[E]njoining enforcement of the contribution limits against Plaintiff would not

17

prevent the unconstitutionality caused by the LC Statute because contributors to candidates other than Jones and Raffensperger would still be subject to those limits").

It is suspect for a preliminary injunction motion to be denied because the request was limited to remedying the harm done to the plaintiff. Rather, the Supreme Court recently made clear that federal courts *must* narrowly tailor injunctive relief to address the harm suffered *only* by the plaintiff, and that broader relief directed to benefit nonparties cannot be granted. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

Granting relief to a non-party "would confound the established order of judicial proceedings." *Id.* at 844 (citation omitted). "Neither declaratory nor injunctive relief . . . can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs" before the court. *Id.* (quotation and citation omitted).

Thus, the district court wrongly found the request to remedy the harm to the Plaintiff *alone* constituted an equitable infirmity warranting the denial of relief. "[T]he question is not whether an injunction offers complete relief to *everyone* potentially affected by an

18

allegedly unlawful act; it is whether an injunction will offer complete *relief to the plaintiffs before the court.*" *Id.* at 852. "Extending the injunction to cover all other similarly situated individuals would not render [Plaintiff's] relief any more complete." *Id.* at 853. Granting injunctive relief *directly* to a nonparty "likely exceed[s] the authority conferred by the Judiciary Act." *Id.* at 860. The district court erred in finding the requested relief to be too narrowly focused on Plaintiff and denying relief for this reason.

Plaintiff wants a level playing field for all committees. If it thought it could have sought an injunction on behalf of all similarly situated parties, it would have done so. However, recognizing that *CASA* prevented this, Plaintiff sought the appropriate narrower remedy.

That said, an injunction in favor of Plaintiff will benefit others. The practical effect of an injunction benefiting Plaintiff is that Defendants likely will not attempt to enforce the enjoined statutes against similar committees formed by other gubernatorial candidates in this primary election. "Even if considered in as-applied terms, a holding in this case that the Act may not be applied to [Plaintiff] . . . would mean that any other [committee] raising the same challenge would also win." *Citizens*

*United*, 558 U.S. at 376 (Roberts, C.J., concurring). Thus, an injunction here would indirectly benefit all potentially affected parties.

However, if this court agrees with the district court that a broader injunction than what Plaintiff requested is warranted, it should enter it. It is the role of the court to fashion appropriate relief. *Sessions*, 582 U.S. at 72.

Granting the injunction Plaintiff seeks is the only remedy that would allow truly equal competition. WBJ has already had significant opportunity to raise and spend funds. This bell cannot be unrung. Stopping WBJ from spending more does not undo the past harm. But this Court can afford Plaintiff, and by extension others similarly situated, the same opportunity as is afforded to WBJ by enjoining the fundraising and coordination limits that apply against Plaintiff during the primary election. This leveling up of speech is the only relief that will be meaningful. Muzzling WBJ after it has spoken cannot remedy the harm of Plaintiff not being afforded an opportunity to engage in the same speech.

As noted by the Northern District of Georgia in another case challenging this regime, a remedy could not be had to undo WBJ's prior

20

spending or to order it not to take advantage of the law that allows it to freely raise and spend funds in support of Jones. That court reasoned that "[the Carr Plaintiffs] ask the Court to twist itself into a logical pretzel to find that by benefiting from a law enacted to confer such a benefit, Defendants caused Plaintiffs' injury." *Carr v. WBJ Leadership, Inc.*, No. 1:25-cv-04426, Order at 15 (N.D. Ga. Aug. 28, 2025). That court noted that without eliminating every leadership committee, enjoining only WBJ "would not unburden their hindered First Amendment rights, nor would it level the unequal playing field complained of." *Id.* at 18.

What's more, Defendants agree with Plaintiff. In a later filed case currently pending in the district court, these same Defendants argue "any alleged burden on Plaintiffs could only arise from the LC Statute in combination with Code Sections 21-5-30(a) and 21-5-41, the contribution limits and coordination ban that apply to Plaintiffs." *Jackson v. Jones*, No. 1:26-cv-00782, Doc 46 at 7-8 (N.D. Ga. Feb. 25, 2026). These are the very provisions Safe Affordable Georgia requests be enjoined. In *Jackson*, the Defendants acknowledge that Sections 21-5-30(a) and 21-5-41 are "the statutes which allegedly 'penalize'"

21

Plaintiff and others. *Id*. Defendants' admission in *Jackson* is fatal to their argument here and show that those are the statutes that must be enjoined.

Because the Constitutional violation here is caused by the operation of multiple statutes in collaboration, some have suggested in earlier cases, and the Defendants argued below, that the correct remedy is to strike the statute that more lightly regulates leadership committees. This isn't right. Three statutes are at play here. Two restrict Plaintiff's ability to fundraise and spend in the primary. The third states that leadership committees are not restricted. The three statutes when read together create the problem. The leadership committee statute permits unlimited fundraising and coordination. A leadership committee is not available to all candidates for governor. The two statutes plaintiff challenges put caps on fundraising and coordination. These statutes cannot constitutionally co-exist with the leadership committee statute and still be constitutional.

The as-applied remedy has to be either: (i) ruling the leadership statute as applied here to be unconstitutional; or (ii) lifting, under the circumstances of this case, the contribution and coordination provisions

22

plaintiff challenges. Following *Davis,* SAGA correctly requested the latter.

Plaintiff squarely challenge the statutes causing its harm, the contribution and coordination limits in O.C.G.A. § 21-5-41 and the O.C.G.A. § 21-5-30(a) fundraising restrictions, just as Defendants argue should happen in *Jackson*. Granting the injunction pending appeal would temporarily relieve Plaintiff of certain burdens placed on hybrid PACs that prevent Safe Affordable Georgia from fairly competing with WJB to influence the gubernatorial primary.

Once that is done, Defendants carry the burden of fully untangling the impact of their constitutional violation. *Riddle v. Hickenlooper*, 742 F.3d 922, 932 (10th Cir. 2014) (Gorsuch, J., concurring) ("can a state really justify unequal treatment because of a 'problem' of its own creation?"). This fact was not lost on the Tenth Circuit when it applied *Davis* in *Riddle.*

*Riddle* held that contribution limits placed on independent and minor party candidates were unconstitutional because major party candidates effectively had limits twice as high as independent candidates in the general election, given their ability to raise and spend

23

money for both a primary and general election *after* the primary had ended, effectively doubling the major party candidates' fundraising limits during the general election. *Id.* at 930. Like Georgia, "the State of Colorado has created different contribution limits for candidates running against each other, and these differences have little to do with fighting corruption." *Id.* As a result, *Riddle* ruled the contribution limits applied to independent candidates were unconstitutional.

This is notable in two ways. First, *Riddle* applied *Davis* to contribution limits. Second, *Riddle* struck the lower limits applicable to independent candidates. It didn't strike the higher limits applicable to party candidates. *Riddle* leveled up, not down. *Riddle* shows the way here.

Plaintiff is substantially likely to prevail in this appeal. The district court plainly erred when it refused to grant an injunction to Plaintiff even after noting that the state's existing regulatory structure is likely unconstitutional. And the district court's rationale that it could not enter the requested injunction because it would only remedy the unconstitutional situation as applied to Plaintiffs does not hold water. *See CASA,* 606 U.S. at 860. The district court should have issued the

24

requested injunction that it found would remedy the constitutional harm it found Plaintiff to suffer.

## II.   There is a Substantial Risk of Irreparable Harm to SAGA unless the Injunction is Granted

In a First Amendment case, a plaintiff's injury is irreparable per se. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373 . That irreparability is especially acute here. The primary election day is May 19, 2026, mail-in ballots can first be mailed on April 20, and in-person advanced voting begins on April 27. *See* Georgia Secretary of State Election Calendar, https://bit.ly/45GdGrQ. Under current Georgia law, Plaintiff is not allowed to raise or expend funds in support of Raffensperger's campaign beyond the statutory contribution limit and Raffensperger is barred from raising funds for the primary election while the legislature is in session, which is expected to run until April 6. Meanwhile, WBJ can continue to raise funds and coordinate with Jones' campaign during the legislative session and beyond. Each day that Safe Affordable Georgia is handcuffed while WBJ is permitted to provide unlimited support to Jones presents an irreparable injury.

The injury goes beyond Plaintiff's loss of First Amendment rights and also speaks to holding a fair primary election ending on May 19, where all candidates are subject to the same rules.

Few weeks remain to raise funds and influence primary voters before in person voting begins. Only an injunction pending appeal can afford any relief prior to the primary election. And only immediate relief will afford an adequate remedy.

## III.   Issuing an Injunction will not Harm the Defendants, Third Parties or the Public Interest

Plaintiff treats the last two factors together because "[t]he last two factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The balance of harms favors issuing an injunction. An injunction serves the public interest. On the one hand, Safe Affordable Georgia faces the prospect of continued unconstitutional limitations on its speech in violation of the First Amendment. On the other hand, allowing Safe Affordable Georgia to coordinate with Raffensperger, his campaign, and other candidates and campaign committees merely provides parity with WBJ, and does not harm the state or anyone else. "[N]either the government nor the public has any legitimate interest in enforcing an unconstitutional [law]."

*LaCroix*, 38 F.4th at 955. As discussed above, third-parties will benefit from the injunction because similarly situated campaigns and candidates will have this injunction to rely upon if Defendants attempt to enforce the enjoined laws against them. WBJ and Jones could not be said to be harmed because they are not constitutionally or equitably entitled to an unfair competitive advantage.

The public interest, the governmental interest, and third-party interests are served by the issuance of an injunction pending appeal.

## IV.    No Bond is Warranted

In the absence of proof showing a likelihood of harm, no bond is necessary. *BellSouth Telecomms., Inc. v. MCImetro Access Trans. Servs., LLC,* 425 F.3d 964, 971 (11th Cir. 2005). An injunction would not harm the state, let alone cause it compensable harm. Defendants did not contend otherwise below. Therefore, any bond requirement should be waived.

CONCLUSION

Plaintiff respectfully requests that the Court reverse the district court enter the requested injunction.

Dated: March 3, 2026                    Respectfully submitted,

                                        */s/ Charles Miller*

27

Charles Miller
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Suite 801
Washington, D.C. 20036
Tel: (202) 301-9800
Fax: (202) 301-3399
cmiller@ifs.org

Christopher S. Anulewicz
Bradley Arant Boult Cummings LLP
1230 Peachtree Street NE
21st Floor
Atlanta, GA 30309

*Counsel for Plaintiff*

28

WORD COUNT AND TYPEFACE CERTIFICATE

I hereby certify this document complies with F.R.A.P. 27(d) because it contains 5,030 words prepared in 14 pt. Century Schoolbook font.

 /s/ *Charles Miller*
Charles M. Miller